UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JENNIFER BAURLE

    *Plaintiff*,

    vs.

EQUIFAX INFORMATION SERVICES, LLC, EXPERIAN INFORMATION SOLUTIONS, INC., LLOYD & MCDANIEL, PLC *and* MIDLAND CREDIT MANAGEMENT, INC.,

    *Defendants*.

Case No.: 8:26-cv-2347

**JURY TRIAL DEMANDED**

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, Jennifer Baurle ("Ms. Baurle"), by and through her attorneys, Seraph Legal, P.A., and complains of the Defendants, Equifax Information Services, LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), Lloyd & McDaniel, PLC ("Lloyd & McDaniel"), and Midland Credit Management, Inc. ("MCM"), stating as follows:

## PRELIMINARY STATEMENT

1. This is an action brought by Ms. Baurle, against Equifax, Experian, and MCM only, for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA") and against Lloyd & McDaniel and MCM only, for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA") and the Florida Consumer Collection Practices Act, § 559.55, Fla. Stat., *et seq.* ("FCCPA").

## JURISDICTION AND VENUE

2.   Subject matter jurisdiction arises under the FDCPA, 15 U.S.C. § 1692k(d), the FCRA, 15 U.S.C. § 1681p, and 28 U.S.C. § 1331, as the FDCPA and FCRA are federal statutes.

3.   This Court has supplemental jurisdiction for Plaintiff's State law FCCPA claims under 28 U.S.C. § 1367.

4.   Equifax, Experian, and MCM are subject to the provisions of the FCRA, and Lloyd & McDaniel and MCM are subject to the provisions of the FDCPA and FCCPA, and to the jurisdiction of this Court pursuant to § 48.193, Fla. Stat. and Fed. R. Civ. P. 4(k).

5.   Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391(b)(2), because the acts complained of were committed and/or caused by the Defendants within the Middle District of Florida.

## PARTIES

6.   Ms. Baurle is a natural person who resides in the city of Parrish, Manatee County, Florida.

7.   Ms. Baurle is a "consumer" as defined by the FDCPA, 15 U.S.C. § 1692a(3), the FCRA, 15 U.S.C. § 1681a(c), and the FCCPA, § 559.55(8), Fla. Stat.

### Equifax

8.   Equifax is a Georgia limited liability company with a principal business address of 1550 Peachtree St. NW, Atlanta, GA 30309.

9. Equifax is registered to do business in the State of Florida and its Florida registered agent is Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301.

10. Equifax is a Consumer Reporting Agency ("CRA") as defined by the FCRA, 15 U.S.C. § 1681a(f).

### Experian

11. Experian is an Ohio corporation with a principal business address of 475 Anton Blvd., Costa Mesa, CA 92626.

12. Experian is registered to do business in the State of Florida and its Florida registered agent is CT Corporation System, 1200 South Pine Island Rd., Plantation, FL 33324.

13. Experian is a CRA as defined by the FCRA, 15 U.S.C. § 1681a(f).

### Lloyd & McDaniel

14. Lloyd & McDaniel is a Kentucky limited liability company with a principal business address of 700 N Hurstbourne Pkwy, Suite 200, Louisville, KY 40222.

15. Lloyd & McDaniel's Kentucky registered agent is Richard B. Alphin, 700 N Hurstbourne Pkwy, Suite 200, Louisville, KY 40222.

16. Lloyd & McDaniel is a debt collector as defined by the FDCPA, 15 U.S.C. § 1692a(6) and the FCCPA, § 559.55(7), Fla. Stat.

17.    Lloyd & McDaniel is registered with the Florida Office of Financial Regulation as a Consumer Collection Agency ("CCA") and holds CCA license number CCA9904304.

18.    As a licensed CCA, Lloyd & McDaniel is presumed to have knowledge of, and is legally bound by, the requirements and obligations imposed by the FDCPA and FCCPA.

## MCM

19.    MCM is a Kansas corporation with a principal business address of 350 Camino De La Reina, Suite 300, San Diego, CA 92108.

20.    MCM is registered to do business in the State of Florida and its Florida registered agent is Midland Funding LLC., 13008 Telecom Drive, Suite 350, Tampa, FL 33637.

21.    MCM is a debt collector as defined by the FDCPA, 15 U.S.C. § 1692a(6) and the FCCPA, § 559.55(7), Fla. Stat.

22.    MCM is registered with the Florida Office of Financial Regulation as a CCA and holds CCA license number CCA0900916.

23.    As a licensed CCA, MCM is presumed to have knowledge of, and is legally bound by, the requirements and obligations imposed by the FDCPA, FCCPA, and FCRA.

## FACTUAL ALLEGATIONS

### Lloyd & McDaniel and MCM Twice Attempt to Garnish Plaintiff's Funds

24. Sometime in or prior to 2020, Ms. Baurle allegedly incurred a consumer credit debt with Citibank, N.A.

25. Citibank, N.A. then sold the balance of the account to MCM sometime in 2020.

26. On May 11, 2021, Lloyd & McDaniel, on behalf of MCM, filed a lawsuit against Ms. Baurle in Manatee County, Florida under case number 2021SC3594.

27. The lawsuit claimed that Ms. Baurle owed $2,305.24 (the "Debt") concerning a Citibank, N.A. credit account.

28. The Debt arose from goods and/or services which were for family, personal, or household purposes, specifically purchases for electronic merchandise for the home, and meets the definition of "debt" within the meaning of the FDCPA, 15 U.S.C. § 1692a(5) and the FCCPA, § 559.55(6), Fla. Stat.

29. On or around May 2, 2023, Lloyd & McDaniel, on behalf of MCM, obtained a default judgment; however, the judgment indicated the Debt was now $2,551.22, which consisted of $2,305.24 principal and $245.98 for court costs.

30. On or around April 13, 2024, Lloyd & McDaniel, on behalf of MCM, obtained a writ of garnishment.

31. However, the amount requested in that garnishment was $2,707.74.

32. On or around April 19, 2024, Lloyd & McDaniel, on behalf of MCM, served the writ of garnishment to Ms. Baurle's employer, asking to garnish a total of $2,707.74.

33. Once the employer's payroll provider, ADP, garnished $2,707.74, it sent a letter to Lloyd & McDaniel, indicating that it had garnished the $2,707.74 and was waiting for further order from the court on where to send the funds.

34. In or around November 2024, the $2,707.74 was fully paid to and received by Lloyd & McDaniel, thereby satisfying, in full, the judgment.

35. Despite receiving the funds, Lloyd & McDaniel and MCM failed to file a notice of satisfaction of wage garnishment or otherwise notify the Court that the judgment had been paid.

36. Nearly two years later, on or about January 13, 2026, despite having already collected the funds via wage garnishment, Lloyd & McDaniel, on behalf of MCM, issued a second writ of garnishment targeting Ms. Baurle's checking account at Truist Bank.

37. The second writ of garnishment requested that and additional $2,551.22 be garnished from Ms. Baurle's checking account.

38. As a direct result of Lloyd & McDaniel and MCM's actions, Truist froze Plaintiff's funds in the amount of $1,921.05, depriving her of access to her money.

39. Ms. Baurle was forced to retain counsel to file a motion to dissolve the writ of garnishment.

40. On or about March 25, 2026, following a hearing on March 20, 2026 at which MCM agreed to dissolve the writ, the Court entered an Order granting Ms. Baurle's Claim of Exemption and Motion to Dissolve Writ, dissolving the writ of

garnishment and ordering that all funds withheld be immediately released to Ms. Baurle. The bank subsequently released the frozen funds back to Ms. Baurle.

41. As of the date of this filing, Lloyd & McDaniel has not filed a satisfaction of wage garnishment with the court on behalf of MCM.

## MCM Reports the Debt to the CRAs

42. At all times material, MCM furnished information regarding the Debt to one or more CRAs, including Equifax and Experian, and is a "furnisher" of information within the meaning of the FCRA, 15 U.S.C. § 1681s-2.

43. Sometime in or around May 2020, MCM started reporting the Debt to Experian, claiming that the original balance was $2,305.

44. Reporting a debt to a CRA is an attempt to collect that debt. *Denan v. Trans Union LLC*, No. 19-1519, at *6 (7th Cir. May 11, 2020)("Consumer reporting agencies and furnishers, though interrelated, serve discrete functions: furnishers report data to incentivize the repayment of debts, while consumer reporting agencies compile and report that data for a fee."); *Edeh v. Midland Credit Management, Inc.*, 748 F. Supp. 2d 1030 (D. Minn. 2010); *Sullivan v. Equifax, Inc.*, No. CIV.A. 01-4336, 2002 WL 799856 *4 (E.D. Pa. Apr. 19, 2002) ("[R]eporting a debt to a credit reporting agency can be seen as a communication in connection with the collection of a debt . . . subject[ing] a debt collector to liability under the FDCPA.")

45. MCM continued to report the balance of the Debt as increasing through February 2026, when the balance purportedly reached $3,403.

46. Sometime in or around May 2020, MCM started reporting the Debt to Equifax, claiming that the original balance was $2,305.

47. Likewise, MCM continued to report the balance of the Debt to Equifax as increasing through February 2026, when the balance purportedly reached $3,403.

48. After February 2026, MCM abruptly reported to both Equifax and Experian that the balance had dropped to $708—a reduction of $2,695 from the $3,403 it had reported the month before.

49. Although the wage garnishment had collected funds sufficient to satisfy the Debt in full in or around November 2024, MCM did not post that payment to the account until in or around March 2026, after Ms. Baurle repeatedly contacted MCM and Lloyd & McDaniel to demand that they account for the garnished funds.

50. Because the Debt was satisfied in full once sufficient funds were garnished in or around November 2024, no further interest should have accrued on the Debt as of that date.

51. MCM, however, continued to add interest on the Debt between November 2024 and the date it finally posted the garnished funds in or around March 2026, solely because of its own delay in crediting the payment.

52. When MCM finally posted the garnished funds in or around March 2026, it credited the funds against principal but did not remove the interest that had wrongly accrued between November 2024 and March 2026.

53.    As a result, MCM continued to report an outstanding balance of $708, consisting entirely of interest that should never have accrued because the Debt had already been satisfied in November 2024.

54.    To date, MCM has not corrected this error. Instead, MCM continues to report inaccurately inflated interest.

### Ms. Baurle Disputes the Debt

55.    Ms. Baurle disputed the MCM tradeline concerning the Debt with Equifax and Experian on or about May 5, 2026 and May 11, 2026, respectively.

56.    When a consumer submits a dispute regarding a particular tradeline to Equifax and/or Experian, each bureau sends an Automated Consumer Dispute Verification ("ACDV") request to the furnisher reporting the tradeline.

57.    The ACDV asks the furnisher to conduct a reasonable investigation into the consumer's dispute.

58.    The CRAs send the ACDVs to the furnisher via e-OSCAR, an online system the CRAs use to communicate with data furnishers like debt collectors.

59.    When a furnisher responds to the ACDV via e-OSCAR, the person sending the response must electronically sign the response and confirm as follows:

> By submitting this ACDV, you certify that you have verified the accuracy of the data in compliance with all legal requirements, and your computer and/or manual records will be adjusted to reflect the changes noted.

60.    On or about May 5, 2026, Ms. Baurle requested and obtained a copy of her consumer credit disclosure from Equifax.

61.    On or around that same day, Ms. Baurle submitted a dispute to Equifax regarding the MCM tradeline concerning the Debt.

62.    As part of her dispute, she attached several documents to support her dispute.

63.    These included a detailed dispute letter explaining that her wages had been garnished in 2024, that MCM attempted to garnish her checking account for the same debt, that a motion was granted to dissolve the second writ of garnishment, and that it was ordered that the funds be returned to her.

64.    Additionally, she attached a copy of the second writ of garnishment, a copy of the motion to dissolve the second writ of garnishment, and a copy of the granted motion.





65.    Upon receipt of Ms. Baurle's dispute, Equifax sent MCM an ACDV form through e-OSCAR, asking MCM to conduct a reasonable investigation into the dispute.

66.    MCM responded on or around May 20, 2026 to the ACDV by indicating that its tradeline was accurate and continued reporting its tradeline to Equifax.

67.    Because Equifax would only allow Ms. Baurle to attach a limited number of documents to her online dispute, she sent a dispute letter to Equifax via certified mail on or around May 5, 2026.

68.    She sent the same dispute letter that she attached in her online dispute and included a copy of a letter from ADP showing that her wages had been garnished in 2024.

69.    She also indicated to Equifax that she submitted a dispute online and included the confirmation number.

70.    USPS shows that Equifax received Ms. Baurle's dispute letter on May 13, 2026.

71. When Equifax received Ms. Baurle's dispute correspondence and the supporting documents included, they were simply scanned and electronically delivered to a contractor outside of North America to be processed.

72. Employees of Equifax's dispute resolution contractor quickly skimmed her dispute to determine which e-OSCAR dispute code should be utilized, but otherwise did almost nothing to evaluate or consider the information provided by Ms. Baurle.

73. Equifax's dispute resolution contractor is not empowered to make any actual investigation into consumer disputes itself.

74. Rather, the employees of the dispute resolution contractor are instructed to simply skim the dispute and then send the relevant data furnisher(s) an ACDV through e-OSCAR.

75. Thus, Equifax's contractor created an ACDV request and it was sent to MCM via e-OSCAR.

76. MCM thereafter returned the ACDV to Equifax, indicating that its information was accurate and continued to report the MCM tradeline to Equifax.

77. On or about May 11, 2026, Ms. Baurle requested and obtained a copy of her consumer credit disclosure from Experian.

78. On that same day, Ms. Baurle submitted a dispute to Experian regarding the MCM tradeline concerning the Debt.

79. As with her dispute to Equifax, she attached a detailed dispute letter explaining that her wages had been garnished in 2024, that MCM had attempted to

garnish her checking account for the same Debt, that the resulting writ had been dissolved, and that the seized funds had been ordered returned to her.

80. Additionally, she attached a copy of the second writ of garnishment, a copy of the motion to dissolve the second writ of garnishment, and a letter from ADP showing that the wages were garnished several years prior.



81. Upon receipt of Ms. Baurle's dispute, Experian sent MCM an ACDV form through e-OSCAR, asking MCM to conduct a reasonable investigation into the dispute.

82. MCM responded to the ACDV by indicating its tradeline was accurate and continued reporting its tradeline to Experian.

**The CRAs' Investigations Were Unreasonable**

83.     The FCRA requires that each CRA conduct its own, independent investigation when a consumer submits a dispute. *See* 15 U.S.C. § 1681i.

84.     Thus, upon receipt of Ms. Baurle's disputes regarding the MCM tradeline, Equifax and Experian were each legally required to investigate the disputes.

85.     However, upon information and belief, the CRAs exclusively relied upon MCM's responses to the ACDVs rather than conduct an independent investigation.

86.     Upon information and belief, the CRAs did not review the attached documents supporting her disputes.

87.     Despite possessing a public legal record that entirely invalidated MCM's reported balance, the CRAs deferred blindly to MCM's automated verification codes, prioritizing a debt collector's flawed database over a binding judicial order.

88.     Over the last 40 years, courts in this district have recognized that a CRA is required to perform an independent reinvestigation when a consumer submits a dispute, rather than relying exclusively on information provided by the data furnisher. *See Swoager v. Credit Bureau of Greater St. Petersburg*, 608 F. Supp. 972 (M.D. Fla. 1985).

89.     More recently, in a case where a consumer likewise provided a CRA with court records documenting that a reported debt was no longer owed, the Eleventh Circuit held that a CRA that does nothing more than forward an ACDV to its data furnisher and parrot the furnisher's response back to the consumer cannot be

said, as a matter of law, to have conducted a reasonable reinvestigation. *See Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 946–47 (11th Cir. 2021) ("It did nothing, although it easily could have done something.").

90. The CRAs had multiple reasons to question MCM's reliability as a data furnisher, including but not limited to MCM's inclusion, alongside the CRAs, as a co-defendant in numerous federal lawsuits alleging violations of the FCRA and improper investigations.

91. Had the CRAs conducted any meaningful investigation of their own, they would have determined that the MCM tradeline could not be verified as accurate and removed it from Ms. Baurle's file.

92. As of the date of filing, Experian continues to incorporate the MCM tradeline in its reports regarding Ms. Baurle.

93. Equifax continued to do so until June 18, 2026, when the MCM tradeline was deleted from her Equifax file, as set forth below.

94. Upon information and belief, since receiving Ms. Baurle's disputes, Equifax and Experian have each continued to prepare and furnish consumer reports containing the false and derogatory MCM tradeline to third parties, including prospective creditors and other subscribers—Equifax until its June 18, 2026 deletion of the tradeline, and Experian through the date of this filing.

### MCM's Investigations Were Unreasonable

95. MCM is a large debt collector and receives numerous disputes regarding the debts it reports to CRAs.

96.     Despite this, it appears that MCM performed a perfunctory review of the data from each of the CRAs and compared it with the data from its own internal systems before quickly verifying the information as "accurate."

97.     The Eleventh Circuit has specifically held—in a case against MCM itself—that a furnisher that answers an ACDV by reporting disputed information as "verified" must first acquire sufficient evidence supporting the conclusion that the information is actually true, and that a jury may find a willful violation of 15 U.S.C. § 1681s-2(b) where the furnisher verifies without doing so. *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295 (11th Cir. 2016); *see also Marchisio v. Carrington Mortg. Servs., LLC*, 919 F.3d 1288 (11th Cir. 2019) (a mere "data conformity" review of the furnisher's own internal records is not a reasonable investigation).

98.     MCM's investigation was unreasonable because it failed to evaluate or account for the formal court judgment attached to Ms. Baurle's disputes, which dissolved MCM's second, unlawful writ of garnishment.

99.     Had MCM executed a cognitive, human review of this public record, rather than relying on a blind "rubber-stamp" of its own internal files, it would have immediately recognized that Ms. Baurle's underlying Debt had already been satisfied in full via the 2024 wage garnishment.

100.    By disregarding a binding court order and failing to cross-reference its credit reporting department with its own legal operations, MCM acted in reckless disregard of its compliance obligations.

101. MCM's investigation was further deficient because it verified an inflated balance drawn from its own automated records rather than reviewing the account's actual payment history, which would have reflected the 2024 satisfaction.

102. Because MCM systematically failed to record the 2024 wage garnishment payment or file a satisfaction of wage garnishment, its automated systems continuously and improperly compounded interest and fees month after month onto a legally extinguished debt.

103. A reasonable investigation requires a furnisher to look beyond its own internal systems when a consumer alleges a specific, systemic accounting error; MCM's verification of a lingering balance on a debt fully satisfied approximately eighteen months earlier constituted a severe procedural breakdown.

104. Finally, MCM validated an objectively false payment timeline that severely distorts Ms. Baurle's credit history and creditworthiness.

105. Following the dissolution of the 2026 bank account garnishment, MCM updated Ms. Baurle's tradeline to inaccurately reflect a payment date of March 2026, despite knowing that the Debt was legally satisfied in 2024.

106. Because MCM continued to add interest and fees after the Debt had been satisfied, its tradeline reported an outstanding balance even though the underlying judgment had been paid in full through the 2024 wage garnishment.

107. By verifying these demonstrably false metrics as "accurate" in the face of contrary documentary evidence, MCM conducted an investigation that was a

sham, reinforcing errors that a basic review of its corporate history would have easily uncovered.

**Ms. Baurle's Third Dispute and Equifax's Deletion of the MCM Tradeline**

108.    On or about May 27, 2026, Ms. Baurle submitted a third dispute regarding the MCM tradeline to Equifax through Equifax's online dispute portal, to which Equifax assigned confirmation number 6147523495.

109.    Ms. Baurle attached to her third dispute substantially the same documents she had provided with her May 5, 2026 disputes—her detailed dispute letter, a copy of the motion to dissolve the second writ of garnishment, and a copy of the Order granting that motion—together with a copy of the underlying judgment.

110.    Upon information and belief, upon receipt of the third dispute, Equifax again sent MCM an ACDV through e-OSCAR concerning the MCM tradeline.

111.    On or about June 18, 2026, Equifax transmitted the results of its reinvestigation to Ms. Baurle, stating that "[w]e have removed this item from your Equifax credit report," and deleted the MCM tradeline from Ms. Baurle's Equifax credit file.

112.    The information before MCM and Equifax in June 2026 was the same information that was before each of them in May 2026, when both answered Ms. Baurle's disputes by verifying the MCM tradeline and continuing to report it.

113.    Indeed, the fact of the Debt's satisfaction had been within MCM's own possession since 2024: the garnished funds were received and retained by MCM's own attorney and agent, Lloyd & McDaniel.

114. The Debt's satisfaction was therefore, at all times, an objectively and readily verifiable fact ascertainable from MCM's and Lloyd & McDaniel's own records.

115. That the MCM tradeline was deleted as soon as any genuine review of Ms. Baurle's documents occurred demonstrates that the tradeline was never verifiable, and that MCM's and Equifax's earlier verifications of the identical information were the product not of reasonable investigations but of perfunctory, automated data-conformity reviews.

116. As of the date of this filing, and in contrast to Equifax, Experian continues to report the MCM tradeline in Ms. Baurle's credit file, despite possessing the same court records and dispute documents on the basis of which the tradeline was deleted from Ms. Baurle's Equifax file.

### Ms. Baurle's Damages

117. As a direct result of the willful and/or negligent conduct of the Defendants, Ms. Baurle has suffered concrete, out-of-pocket financial losses and economic injuries.

118. Due to MCM's unlawful failure to record the 2024 satisfaction of debt and its subsequent execution of an invalid, secondary writ of garnishment, Ms. Baurle was entirely deprived of the use and possession of her personal funds when her checking account was frozen.

119. To mitigate this unlawful seizure Ms. Baurle was forced to retain legal counsel to successfully dissolve the improper writ.

120. Furthermore, Ms. Baurle has sustained ongoing impairment to her credit record, financial reputation, and general creditworthiness.

121. By publishing and verifying a collection tradeline that continues to report an active, falsely escalating balance long after the debt was legally extinguished in 2024, MCM, Experian, and Equifax artificially suppressed Ms. Baurle's credit scores.

122. This ongoing dissemination of false derogatory data effectively "re-aged" the delinquency by inaccurately shifting the recorded satisfaction date to March 2026, falsely signaling to the creditors purchasing her credit reports that Ms. Baurle remained delinquent for some sixteen months longer than she actually was.

123. This distorted credit profile has caused Ms. Baurle to suffer loss of credit opportunities, increased cost of credit, and severe frustration in navigating routine financial transactions.

124. In addition to economic and reputational harm, Ms. Baurle has suffered emotional distress, mental anguish, and physical manifestations of stress due to the Defendants' egregious conduct.

125. Although Ms. Baurle had satisfied the underlying judgment in 2024, she was nonetheless subjected to a second garnishment that froze her bank account, and then to the credit bureaus' repeated refusal to correct the tradeline despite a court judgment.

126. This dynamic directly induced intense feelings of hopelessness, extreme anxiety over her financial stability, humiliation within her community, and

sleeplessness, as Ms. Baurle was left entirely vulnerable to a debt collector that refused to abide by the law and continued to label her as delinquent on both the public docket and credit reports.

127. Lloyd & McDaniel directly caused and compounded Ms. Baurle's damages by failing to maintain accurate, synchronized records of its legal collections.

128. Despite receiving the garnished funds on behalf of its client, Lloyd & McDaniel negligently failed to file a formal satisfaction of wage garnishment with the court or update MCM's internal accounting infrastructure to reflect a zero balance.

129. This systemic failure by Lloyd & McDaniel set off a chain reaction of compounding financial and emotional injuries. Because Lloyd & McDaniel left the 2023 judgment technically open on the court docket, in January 2026 it compounded that administrative failure by filing a second, unlawful writ of garnishment against Ms. Baurle's checking account for the exact same debt.

130. This reckless duplication of legal proceedings directly resulted in the freezing of Ms. Baurle's funds and forced Ms. Baurle to sell off personal items in order to pay her other creditors.

131. As of the date of this filing, MCM's attorney, Lloyd & McDaniel, has failed to file a satisfaction of wage garnishment or inform the court that the balance of the Debt has been satisfied.

132. Ms. Baurle has hired the undersigned law firm to represent her in this matter and has assigned it her right to fees and costs.

## COUNT I
## MCM and LLOYD & MCDANIEL'S JOINT & SEVERAL VIOLATIONS OF THE FDCPA, 15 U.S.C. § 1692e

133.    Ms. Baurle adopts and incorporates paragraphs 1 – 132 as if fully stated herein.

134.    MCM and Lloyd & McDaniel violated **15 U.S.C. § 1692e, including §§ 1692e(2)(A) and 1692e(10),** when they used misleading and deceptive means to collect a debt from Ms. Baurle, specifically by representing to a financial institution, the court, and/or to the CRAs, that the Debt was still owed when it had already been collected in full via wage garnishment.

135.    MCM and Lloyd & McDaniel's conduct renders them liable for the above-stated violations of the FDCPA.

136.    As a direct result of MCM and Lloyd & McDaniel's violations, Ms. Baurle suffered damages, including loss of use of funds, damage to reputation, and emotional distress.

**WHEREFORE,** Ms. Baurle respectfully requests that this Honorable Court enter judgment against MCM and Lloyd & McDaniel, jointly and severally, for:

a.    Statutory damages of **$1,000.00**, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

b.    Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

c.    Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

d.      Such other relief that this Court deems just and proper.

## COUNT II
## MCM and LLOYD & MCDANIEL'S JOINT & SEVERAL VIOLATIONS OF THE FDCPA, 15 U.S.C. § 1692f

137.   Ms. Baurle adopts and incorporates paragraphs 1 – 132 as if fully stated herein.

138.   MCM and Lloyd & McDaniel violated **15 U.S.C. § 1692f, including § 1692f(1),** by using unfair or unconscionable means to collect a debt, specifically by attempting to double-collect on a satisfied judgment, failing to record the satisfaction with the court, and/or reporting the debt to the CRAs as an unpaid debt, when it was satisfied in 2024. MCM and Lloyd & McDaniel further used unfair and unconscionable means by collecting, and continuing to collect and report, interest that accrued only because of MCM's delay in posting the garnished funds, and by compounding interest upon that wrongly-accrued interest, when no such interest was owed after the Debt was satisfied in 2024.

139.   MCM and Lloyd & McDaniel's conduct renders them liable for the above-stated violations of the FDCPA.

140.   As a direct result of MCM and Lloyd & McDaniel's violations, Ms. Baurle suffered damages, including loss of use of funds, damage to reputation, and emotional distress.

**WHEREFORE,** Ms. Baurle respectfully requests that this Honorable Court enter judgment against MCM and Lloyd & McDaniel, jointly and severally, for:

a.   Statutory damages of **$1,000.00**, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

b.   Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

c.   Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

d.   Such other relief that this Court deems just and proper.

## COUNT III
## MCM'S WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681s-2(b)

141.   Ms. Baurle adopts and incorporates paragraphs 1 – 132 as if fully restated herein.

142.   MCM violated **15 U.S.C. § 1681s-2(b)** by failing to conduct a reasonable investigation after receiving notice of Ms. Baurle's disputes from Equifax and Experian, and by continuing to furnish information it knew or should have known was inaccurate—namely, an outstanding balance consisting entirely of interest that should never have accrued on a debt satisfied in full in 2024.

143.   MCM's conduct was thus willful and intentional. MCM's willfulness is further evidenced by the June 2026 deletion of its tradeline upon Ms. Baurle's third dispute, which presented the same documents and information MCM had twice answered, in May 2026, by verifying the Debt as accurate.

144.   MCM is therefore liable, pursuant to 15 U.S.C. § 1681n, for the greater of Ms. Baurle's actual damages and statutory damages of $1,000 per violation, plus punitive damages, reasonable attorneys' fees and costs.

**WHEREFORE,** Ms. Baurle respectfully requests that this Honorable Court enter judgment against MCM for:

    a.     The greater of Ms. Baurle's actual damages or statutory damages of $1,000 per violation pursuant to 15 U.S.C. § 1681n(a)(1)(A);

    b.     Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

    c.     Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and,

    d.     Such other relief that this Honorable Court deems just and proper.

### COUNT IV
### MCM'S NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681s-2(b)
### (Pled in the Alternative to Count III)

145.    Ms. Baurle adopts and incorporates paragraphs 1 – 132 as if fully restated herein, and pleads this count strictly in the alternative to Count III.

146.    MCM violated **15 U.S.C. § 1681s-2(b)** by failing to conduct a reasonable investigation after receiving notice of Ms. Baurle's disputes from Equifax and Experian, and by continuing to furnish information it knew or should have known was inaccurate—namely, an outstanding balance consisting entirely of interest that should never have accrued on a debt satisfied in full in 2024.

147.    MCM's conduct was negligent, and could have easily been foreseen to cause harm to Ms. Baurle, and did cause harm to Ms. Baurle.

148.    MCM acted negligently, and is liable, pursuant to 15 U.S.C. § 1681o, for Ms. Baurle's actual damages, reasonable attorney's fees and costs.

**WHEREFORE,** Ms. Baurle respectfully requests that this Honorable Court enter judgment against MCM for:

a. Ms. Baurle's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and,

c. Such other relief that this Honorable Court deems just and proper.

**COUNT V**
**MCM and LLOYD & MCDANIEL'S JOINT & SEVERAL VIOLATIONS OF THE FCCPA, § 559.72(5), FLA. STAT.**

149. Ms. Baurle adopts and incorporates paragraphs 1 – 132 as if fully stated herein.

150. MCM and Lloyd & McDaniel violated **§ 559.72(5), Fla. Stat.** by disclosing to a third party, specifically Ms. Baurle's financial institution, information affecting Ms. Baurle's reputation and creditworthiness, with actual knowledge or reason to know that the information was false.

151. Specifically, MCM and Lloyd & McDaniel served a writ of garnishment upon Ms. Baurle's financial institution, Truist Bank, seeking to collect a debt that had previously been satisfied in full through the 2024 wage garnishment.

152. Therefore, MCM and Lloyd & McDaniel are liable for their conduct.

**WHEREFORE,** Ms. Baurle respectfully requests that this Honorable Court enter judgment against MCM and Lloyd & McDaniel, jointly and severally, for:

a. Statutory damages of **$1,000** *per Defendant* pursuant to § 559.77(2), Fla. Stat.;

Page **26** of **36**

b.      Actual damages pursuant to § 559.77(2), Fla. Stat.;

c.      Injunctive relief prohibiting any further collection of the Debt by MCM or Lloyd & McDaniel;

d.      Reasonable costs and attorneys' fees pursuant to § 559.77(2), Fla. Stat.; and

e.      Such other relief that this Honorable Court deems just and proper.

### COUNT VI
### MCM and LLOYD & MCDANIEL'S JOINT & SEVERAL VIOLATIONS OF THE FCCPA, § 559.72(9), FLA. STAT.

153.    Ms. Baurle adopts and incorporates paragraphs 1 – 132 as if fully stated herein.

154.    MCM and Lloyd & McDaniel violated **§ 559.72(9), Fla. Stat.** by claiming, attempting, or threatening to enforce a debt when they knew the debt was not legitimate, and by asserting the existence of a legal right to garnish Ms. Baurle's bank account when they knew that no such legal right existed.

155.    Specifically, MCM and Lloyd & McDaniel had actual knowledge that the underlying default judgment had been fully satisfied via the prior successful wage garnishment, having themselves received and retained the garnished funds in 2024.

156.    Despite this knowledge, MCM and Lloyd & McDaniel affirmatively asserted a right to double-recovery by issuing and serving a writ of garnishment to freeze Ms. Baurle's bank account.

157.    Therefore, MCM and Lloyd & McDaniel are liable for their conduct.

**WHEREFORE,** Ms. Baurle respectfully requests that this Honorable Court enter judgment against MCM and Lloyd & McDaniel, jointly and severally, for:

a.  Statutory damages of **$1,000** *per Defendant* pursuant to § 559.77(2), Fla. Stat.;

b.  Actual damages pursuant to § 559.77(2), Fla. Stat.;

c.  Injunctive relief prohibiting any further collection of the Debt by MCM or Lloyd & McDaniel;

d.  Reasonable costs and attorneys' fees pursuant to § 559.77(2), Fla. Stat.; and

e.  Such other relief that this Honorable Court deems just and proper.

**COUNT VII**
**EQUIFAX'S WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681e(b)**

158.  Ms. Baurle adopts and incorporates paragraphs 1 – 132 as if fully stated herein.

159.  Equifax violated **15 U.S.C. § 1681e(b)** by failing to maintain and follow reasonable procedures to ensure the maximum possible accuracy of the information contained in Ms. Baurle's credit file, when it continued to incorporate the MCM tradeline despite having received documents from Ms. Baurle establishing that the Debt had been satisfied in 2024.

160.  Equifax's conduct, action, and inaction was willful and intentional or, alternately, was engaged in with reckless disregard for its consequences, rendering Equifax liable pursuant to 15 U.S.C. § 1681n. Equifax's June 18, 2026 deletion of the

MCM tradeline, upon receipt of the same documents Ms. Baurle had provided in early May 2026, further evidences that Equifax's earlier verification and continued publication of the tradeline were undertaken in reckless disregard of its accuracy.

**WHEREFORE,** Ms. Baurle respectfully requests that this Honorable Court enter judgment against Equifax for:

a. The greater of statutory damages of $1,000 per violation or Ms. Baurle's actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. §1681n(a)(3); and,

d. Such other relief that the Court deems just and proper.

## COUNT VIII
## EQUIFAX'S NEGLIGENT VIOLATION OF THE FCRA, 15 U.S.C. § 1681e(b)
### (Pled in the Alternative to Count VII)

161. Ms. Baurle adopts and incorporates paragraphs 1 – 132 as if fully stated herein, and strictly pled in the alternative to Count VII.

162. Equifax violated **15 U.S.C. § 1681e(b)** by failing to maintain and follow reasonable procedures to ensure the maximum possible accuracy of the information contained in Ms. Baurle's credit file, when it continued to incorporate the MCM tradeline despite having received documents from Ms. Baurle establishing that the Debt had been satisfied in 2024.

163. Equifax's conduct, action, and inaction was the result of negligence and

Ms. Baurle is entitled to an award of actual damages pursuant to 15 U.S.C. § 1681o.

**WHEREFORE,** Ms. Baurle respectfully requests that this Honorable Court enter judgment against Equifax for:

    a.      Ms. Baurle's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

    b.      Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and,

    c.      Such other relief that the Court deems just and proper.

## COUNT IX
### EQUIFAX'S WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681i(a)(1)(A)

164.  Ms. Baurle adopts and incorporates paragraphs 1 – 132 as if fully stated herein.

165.  Equifax violated **15 U.S.C. § 1681i(a)(1)(A)** by failing to conduct a reasonable investigation into Ms. Baurle's dispute of the MCM tradeline. Instead of reviewing the evidence provided by Ms. Baurle, Equifax blindly deferred to the automated verification of MCM, thereby retaining the false and derogatory information on Ms. Baurle's credit file.

166.  Equifax's conduct was thus willful and intentional, or, alternately, was done with reckless disregard for its duties under the FCRA to investigate consumer disputes. That Equifax removed the MCM tradeline in June 2026, when presented with the same documents Ms. Baurle had submitted with her May 2026 disputes,

further evidences that Equifax's earlier reinvestigations were deficient, and willfully so.

167.   Accordingly, Equifax is liable, pursuant to 15 U.S.C. § 1681n, for the greater of Ms. Baurle's actual damages or statutory damages of $1,000 per violation, plus punitive damages, reasonable attorneys' fees, and costs.

**WHEREFORE,** Ms. Baurle respectfully requests this Honorable Court enter judgment against Equifax for:

a.   The greater of Ms. Baurle's actual damages or statutory damages of $1,000 per violation pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.   Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.   Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and,

d.   Such other relief that this Honorable Court deems just and proper.

**COUNT X**
**EQUIFAX'S NEGLIGENT VIOLATIONS OF THE**
**FCRA, 15 U.S.C. § 1681i(a)(1)(A)**
**(Pled in the Alternative to Count IX)**

168.   Ms. Baurle adopts and incorporates paragraphs 1 – 132 as if fully stated herein, and strictly pled in the alternative to Count IX.

169.   Equifax violated **15 U.S.C. § 1681i(a)(1)(A)** by failing to conduct a reasonable investigation into Ms. Baurle's dispute of the MCM tradeline. Instead of reviewing the evidence provided by Ms. Baurle, Equifax blindly deferred to the

automated verification of MCM, thereby retaining the false and derogatory information on Ms. Baurle's credit file.

170. Equifax acted negligently, and is liable, pursuant to 15 U.S.C. § 1681o, for Ms. Baurle's actual damages, reasonable attorneys' fees, and costs.

**WHEREFORE,** Ms. Baurle respectfully requests this Honorable Court enter judgment against Equifax for:

a. Ms. Baurle's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and,

c. Such other relief that this Court deems just and proper.

## COUNT XI
## EXPERIAN'S WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681e(b)

171. Ms. Baurle adopts and incorporates paragraphs 1 – 132 as if fully stated herein.

172. Experian violated **15 U.S.C. § 1681e(b)** by failing to maintain and follow reasonable procedures to ensure the maximum possible accuracy of the information contained in Ms. Baurle's credit file, when it continued to incorporate the MCM tradeline despite having received documents from Ms. Baurle establishing that the Debt had been satisfied in 2024.

173. Experian's conduct, action, and inaction was willful and intentional or, alternately, was engaged in with reckless disregard for its consequences, rendering Experian liable pursuant to 15 U.S.C. § 1681n.

**WHEREFORE,** Ms. Baurle respectfully requests that this Honorable Court enter judgment against Experian for:

a. The greater of statutory damages of $1,000 per violation or Ms. Baurle's actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. §1681n(a)(3); and,

d. Such other relief that the Court deems just and proper.

## COUNT XII
## EXPERIAN'S NEGLIGENT VIOLATION OF THE FCRA, 15 U.S.C. § 1681e(b)
### (Pled in the Alternative to Count XI)

174. Ms. Baurle adopts and incorporates paragraphs 1 – 132 as if fully stated herein, and strictly pled in the alternative to Count XI.

175. Experian violated **15 U.S.C. § 1681e(b)** by failing to maintain and follow reasonable procedures to ensure the maximum possible accuracy of the information contained in Ms. Baurle's credit file, when it continued to incorporate the MCM tradeline despite having received documents from Ms. Baurle establishing that the Debt had been satisfied in 2024.

176. Experian's conduct, action, and inaction was the result of negligence and Ms. Baurle is entitled to an award of actual damages pursuant to 15 U.S.C. § 1681o.

**WHEREFORE,** Ms. Baurle respectfully requests that this Honorable Court enter judgment against Experian for:

a.  Ms. Baurle's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.  Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and,

c.  Such other relief that the Court deems just and proper.

**COUNT XIII**
**EXPERIAN'S WILLFUL VIOLATIONS OF THE**
**FCRA, 15 U.S.C. § 1681i(a)(1)(A)**

177.  Ms. Baurle adopts and incorporates paragraphs 1 – 132 as if fully stated herein.

178.  Experian violated **15 U.S.C. § 1681i(a)(1)(A)** by failing to conduct a reasonable investigation into Ms. Baurle's dispute of the MCM tradeline. Instead of reviewing the evidence provided by Ms. Baurle, Experian blindly deferred to the automated verification of MCM, thereby retaining the false and derogatory information on Ms. Baurle's credit file.

179.  Experian's conduct was thus willful and intentional, or, alternately, was done with reckless disregard for its duties under the FCRA to investigate consumer disputes.

180.  Accordingly, Experian is liable, pursuant to 15 U.S.C. § 1681n, for the greater of Ms. Baurle's actual damages or statutory damages of $1,000 per violation, plus punitive damages, reasonable attorneys' fees, and costs.

**WHEREFORE,** Ms. Baurle respectfully requests this Honorable Court enter judgment against Experian for:

a.  The greater of Ms. Baurle's actual damages or statutory damages of $1,000 per violation pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.  Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.  Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and,

d.  Such other relief that this Honorable Court deems just and proper.

### COUNT XIV
### EXPERIAN'S NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681i(a)(1)(A)
### (Pled in the Alternative to Count XIII)

181.  Ms. Baurle adopts and incorporates paragraphs 1 – 132 as if fully stated herein, and strictly pled in the alternative to Count XIII.

182.  Experian violated **15 U.S.C. § 1681i(a)(1)(A)** by failing to conduct a reasonable investigation into Ms. Baurle's dispute of the MCM tradeline. Instead of reviewing the evidence provided by Ms. Baurle, Experian blindly deferred to the automated verification of MCM, thereby retaining the false and derogatory information on Ms. Baurle's credit file.

183.  Experian acted negligently, and is liable, pursuant to 15 U.S.C. § 1681o, for Ms. Baurle's actual damages, reasonable attorneys' fees, and costs.

**WHEREFORE,** Ms. Baurle respectfully requests this Honorable Court enter judgment against Experian for:

a.   Ms. Baurle's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.   Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and,

c.   Such other relief that this Court deems just and proper.

## JURY TRIAL DEMANDED

Ms. Baurle hereby demands a trial by jury on all issues so triable.

Respectfully submitted on August 12, 2026, by:

*/s/ Thomas M. Bonan*
Thomas M. Bonan Esq.
Florida Bar No.: 118103
**SERAPH LEGAL, P. A.**
3505 E Frontage Rd., Suite 145
Tampa, FL 33607
Tel: 813-321-2347
Fax: 855-500-0705
TBonan@SeraphLegal.com

Page **36** of **36**